## LINDA BEHRNS *v.* RONALD BEHRNS
### (AC 23611)

Schaller, Dranginis and Bishop, Js.

Argued September 19—officially released November 25, 2003

*James H. Lee,* for the appellant (plaintiff).

*Veronica E. Reich,* for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Linda Behrns, appeals from the trial court's denial of her motion for contempt in which she alleged that the defendant, Ronald Behrns, had failed to pay alimony and child support in accordance with the terms of the marital dissolution judgment. The dispositive issue in this appeal is whether

the trial court correctly construed the parties' marital dissolution agreement, which was incorporated into the dissolution judgment, as self-executing. The plaintiff contends that the court improperly concluded that the agreement was self-executing.[1] We agree and reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. On November 12, 1986, the court rendered judgment dissolving the marriage of the parties. The judgment incorporated a written dissolution agreement, which is the subject of this appeal. Pursuant to the dissolution agreement and the subsequent judgment, the defendant was obligated to pay to the plaintiff $815 every other week as alimony and $325 every other week as child support. Both of those provisions were subject to reductions as outlined in the agreement.[2] Relevant to this appeal is § 5.3 of the agreement, which sets forth a formula under which the payments may increase or decrease. Section 5.3 of the agreement states that "[a]ll the payments pursuant to [this section], shall increase or decrease, by an amount equal to the cost of living as measured by the Consumer Price Index [price index], or the percentage yearly increase or decrease in the [defendant's] salary and wages, whichever is less . . . ."

---

[1] The plaintiff also claims that the court improperly construed the dissolution agreement and the judgment of dissolution to permit the elimination of child support, the court improperly refused to decide the plaintiff's motion for reargument and the court improperly interpreted the phrase "whichever is less" in the separation agreement. Because we conclude that the separation agreement is not self-executing, we do not reach those issues. We anticipate that on remand, the trial court will hear testimony and consider evidence in the process of determining the meaning and import of the palpably ambiguous language that the dissolution agreement contains.

[2] Upon the first child's reaching the age of eighteen, the child support was to be reduced to $175 every other week, and on the other child's reaching eighteen, the payments would cease. Upon cohabitation by the wife, the alimony would be eliminated, and the child support would be $250 every other week until all children reached the age of eighteen.

When the parties' marriage was dissolved, the defendant was employed by the GTE Corporation. In 1990, however, the defendant lost his job. From 1990 forward, the defendant's tax returns indicate that he has had no employment income. Since 1990, the defendant has only sporadically made alimony and child support payments. On April 10, 2001, the plaintiff filed a postjudgment motion for contempt in which she alleged that there was an arrearage of $56,237 in past due alimony and $36,750 in child support.[3] Testimony was heard on July 8 and 9, 2002.

At the hearing, the defendant testified that upon losing his job in 1990 and without further employment, he understood the agreement to permit him, without recourse to the court, to reduce his alimony and child support payments to zero. The defendant interpreted the clause in § 5.3 of the agreement, "whichever is less," to permit him to make no alimony or child support payments when he lost employment income, and he believed that he was not required to first seek a modification in court. The plaintiff, on the other hand, testified that she understood that portion of the agreement to obligate the defendant to continue paying child support and alimony in amounts reduced only by the percentage reduction in his employment earnings or the percentage reduction in the price index, whichever percentage reduction was less. On October 4, 2002, the court denied the plaintiff's motion for contempt, finding that the dissolution agreement was self-executing and that under the terms of the agreement and the judgment, the defendant did not owe any alimony or child support. This appeal followed.

The plaintiff argues that it was an abuse of discretion by the court to deny her motion for contempt. Specifi-

[3] The plaintiff also claimed that the defendant owed $2250 for the children's insurance and unreimbursed medical and dental expenses. The denial of that claim is not presently before this court.

cally, she argues that the agreement was not self-executing and that the defendant was required to seek an order modifying the judgment instead of unilaterally reducing the alimony and child support payments to zero. We agree.

We begin our analysis by addressing the appropriate standard of review. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order. To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . Here, the [plaintiff's] argument specifically attacks the factual findings that the court relied on to conclude that the [defendant] was not in contempt. Therefore, in addition to reviewing the propriety of the court's decision as a general matter, we first review the trial court's factual determinations. In so doing, we apply our clearly erroneous standard, which is the well settled standard for reviewing a trial court's factual findings. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; internal quotation marks omitted.) *Richards* v. *Richards*, 78 Conn. App. 734, 741–42, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003).

The resolution of this appeal turns on the question of whether the dissolution agreement, and therefore the judgment, is self-executing. In answering that question, we are guided by the holding of our Supreme Court in *Eldridge* v. *Eldridge*, 244 Conn. 523, 710 A.2d 757 (1998). In *Eldridge*, our Supreme Court reiterated the general proposition that "court orders must be complied with until they are modified by a court or successfully challenged." (Internal quotation marks omitted.)

Id., 530. In *Eldridge*, our Supreme Court upheld that portion of the trial court's determination that the dissolution decree was not self-executing. Id., 529–32. Subsequently, in *Sablosky* v. *Sablosky*, 258 Conn. 713, 720, 784 A.2d 890 (2001), relying on *Eldridge*, our Supreme Court stated that "where there is an ambiguous term in a judgment, a party must seek a clarification upon motion rather then resort to self-help." Later, in a nonfamily matter, our Supreme Court further elucidated the underlying basis of its decisions in *Eldridge* and *Sablosky* as follows: "Furthermore, although we concluded in *Sablosky* that the public policy in favor of encouraging parties to seek judicial resolution of ambiguous judgments rather than resort to self-help was particularly compelling in family cases; [id.] 720–21; nothing in that case suggests that the same policy is not a consideration in nonfamily cases." *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 245–46, 796 A.2d 1164 (2002).

The underlying facts in *Eldridge* are particularly germane to our discussion. In *Eldridge*, the husband was obligated to pay periodic unallocated alimony and child support to his former wife. *Eldridge* v. *Eldridge*, supra, 244 Conn. 525. The agreement and judgment provided that in the event that the wife's gross annual earnings exceeded $25,000, one half of the amount by which her earnings exceeded $25,000 would be deducted from the periodic unallocated alimony. Id. The Supreme Court upheld that portion of the trial court's determination that this provision was not self-executing and that the husband was required to obtain court approval of any modification of the court's financial orders. Id., 531–32. The principal enunciated in *Eldridge* and *Sablosky* that if the terms of an agreement are ambiguous, its provisions are not self-executing leads us to the conclusion that the agreement at hand, considerably less clear than the *Eldridge* agreement, is similarly not self-executing.

Section 5.3 of the agreement sets forth a complicated formula for determining an increase or decrease in the child support and alimony payments. Section 5.3 requires a calculation based on the percentage change in the price index and the defendant's wages and salary. It is not clear from the language of § 5.3 whether that calculation is based on the base payment set forth in the rest of the agreement or whether the calculation is based on the previous year's payment adjusted as per the formula. If the *Eldridge* formula, which was arguably clearer, was determined not to be self-executing, then this more complex provision cannot be self-executing.

An examination of the cases in which this court has found an order to be self-executing further convinces us that this order is not self-executing. See, e.g., *Stein* v. *Stein*, 49 Conn. App. 536, 540, 714 A.2d 1272 (1998) (provision that terminates alimony when plaintiff obtained full-time employment self-executing); *DeMaria* v. *DeMaria*, 47 Conn. App. 729, 734, 707 A.2d 741 (1998) (provision that terminates alimony upon cohabitation self-executing), rev'd on other grounds, 247 Conn. 715, 724 A.2d 1088 (1999). Unlike the agreement in this case, the reductions in payments in both *Stein* and *DeMaria* were contingent on definite and discernable events. In addition to the complicated mathematical computation, the agreement in this instance also contains an ambiguity in § 5.3 as to what the term "whichever is less" refers. The defendant testified that he interpreted the phrase to mean that he was required to pay whichever amount was less, and the plaintiff interpreted the language to mean that he was to increase or decrease his payments by the lesser of the percentage change in the price index or in his salary. Both parties attached a different meaning to the words in the agreement, thus, further complicating the potential for ready calculation. When there is an ambiguous term,

we will not countenance one party's interpreting the term and undertaking unilateral action to the detriment of the other party. In such a circumstance, the party seeking to alter payments must seek the assistance of the court. See *Sablosky* v. *Sablosky*, supra, 258 Conn. 720.

We conclude that the agreement was not self-executing and that the defendant was required, therefore, to have sought a modification of the agreement rather than resorting to self-help. In light of that conclusion, the court's findings are clearly erroneous. Consequently, we conclude that it was an abuse of discretion to deny the plaintiff's postjudgment motion for contempt.

The judgment is reversed and the case is remanded with direction to conduct a new hearing on the plaintiff's motion for contempt.

In this opinion the other judges concurred.